LOUIS P. DELL, ESQ. (SBN 164830)
LAW OFFICE OF LOUIS P. DELL
715 South Victory Blvd.
Burbank, CA 91502
(818) 478-2822 (Office)
(818) 436-5966 (Fax)
e-mail: ldell@louisdell.com

Attorney for Plaintiff,
RAYMOND ALVANDI

IN THE UNITED STATES DISTRICT COURT FOR THE

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMOND ALVANDI, <br><br> Plaintiffs, <br><br> vs. <br><br> FIDELITY CAPITAL HOLDINGS, INC., EXPERIAN INFORMATION SOLUTIONS, INC., and DOES 1 to 10, inclusive, <br><br> Defendants. | CASE NO. 14-cv-04379-DSF-AJW <br><br> PLAINTIFF RAYMOND ALVANDI'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT EXPERIAN INFORMATION SOLUTIONS, INC.'S MOTION FOR SUMMARY JUDGMENT <br><br> Date:      June 29, 2015 <br> Time:     1:30 p.m. <br> Courtroom: 840 [Roybal] <br><br> Complaint filed:   6/6/14 <br> Trial Date:        9/8/15 |

TO THE COURT AND TO ALL PARTIES OF RECORD:

Plaintiff RAYMOND ALVANDI hereby submits this memorandum of points and

authorities in opposition to Defendant Experian Information Solutions, Inc.'s Motion

for Summary Judgment.

Dated:  May 31, 2015          LAW OFFICE OF LOUIS P. DELL

/s/ Louis P. Dell
Louis P. Dell, Esq.
Attorney for Plaintiff,
RAYMOND ALVANDI

-1-

1

## TABLE OF CONTENTS

2  I. INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

3  II. FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

4         Joolhar Medical Services. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

5         Fidelity Collection Item. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

6         Lexington Law Retained to Dispute Fidelity Item. . . . . . . . . . . . . . . . . 2

7         Equifax and TransUnion Removed Fidelity Item. . . . . . . . . . . . . . . . 3

8         Experian Did Not Reinvestigate Multiple Disputes. . . . . . . . . . . . . . . 4

9         Experian's Policies and Practices. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

10         Experian Did Not Follow It's Policy. . . . . . . . . . . . . . . . . . . . . . . . . . 6

11         Experian Created Sham Dispute After Lawsuit Filed. . . . . . . . . . . . . 6

12         Experian Credit Reports Contain Multiple Inaccuracies. . . . . . . . . . . 7

13         Multiple Inaccuracies Remain. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

14  III. SUMMARY JUDGMENT LEGAL STANDARD. . . . . . . . . . . . . . . . . . . . . . 7

15  IV. FAIR CREDIT REPORTING ACT VIOLATIONS. . . . . . . . . . . . . . . . . . . . 8

16    A. Duty of Credit Reporting Agencies. . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

17    B. Requirement of Maximum Accuracy. . . . . . . . . . . . . . . . . . . . . . . . . . . 9

18    C. Experian's Violation of Fair Credit Reporting Act. . . . . . . . . . . . . . . . 10

19      1. § 1681i Claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

20         Patent Inaccuracy. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

21         Material Inaccuracy. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

22         Failure to Conduct Investigation. . . . . . . . . . . . . . . . . . . . . . . . . . . 12

23      2. § 1681e(b) Claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

24  V. EXPERIAN'S PROCEDURAL ARGUMENTS ARE WITHOUT MERIT. . . . . 15

25    A. Alvandi's Verbal Agreement with Joolhar's office Not Hearsay. . . . . . . . 15

26    B. Deposition Testimony by Lay Witness Is Not a Legal Position or Theory. . . 15

27    C. No Collateral Attack Is Made on Debt. . . . . . . . . . . . . . . . . . . . . . . . . . 16

28  CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**Plaintiff Raymond Alvandi's Memorandum of Points and Authorities in
Opposition to Motion for Summary Judgment**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES**

**CASES**

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Carvalho v. Equifax Info. Svcs., LLC,* 629 F.3d 876. . . . . . . . . . . . . . . . . . . . . . 10, 11, 16, 17

*Celotex Corp. v. Catrett,* 477 U.S. 317.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Cortez v. Trans Union, LLC,* 617 F.3d 688. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Dennis v. BEH-1, LLC,* 520 F.3d 1066.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11, 13, 15

*Drew v. Equifax Info. Svcs, LLC,* 690 F.3d 1100. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Gorman v. Wolpoff & Abramson, LLP,* 584 F.3d 1147. . . . . . . . . . . . . . . . . . . . . . 10, 15, 17

*Guimond v. Trans Union Credit Information Co.,* 45 F.3d 1329. . . . . . . . . . . . . . 9, 13, 14, 15

*House v. Bell,* 547 U.S. 518. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Koropoulos v. Credit Bureau, Inc.,* 734 F.2d 37. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.,* 210 F.3d 1099. . . . . . . . . . . . . . . . . . . . . . . 8

**FEDERAL STATUTES**

15 U.S.C. § 1681 et. seq.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

15 U.S.C. § 1681e(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6

15 U.S.C. § 1681i(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FCRA, § 1681i(a)(1)(A), § 1681i(a)(2)(A).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

FRE 701. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692f(1). . . . . . . . . . . . . . . . . . . 11

FDCPA, 15 U.S.C. § 1692e(5). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Fed. R. Civ. P. 56(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

§ 1681c(f). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

§ 1681e(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 14, 15

§ 1681i. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

**Plaintiff Raymond Alvandi's Memorandum of Points and Authorities in
Opposition to Motion for Summary Judgment**

1

§ 1681i(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 17

§ 1681i(a)(1)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 17

§ 1681i(a)(2)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

§ 1681i(a)(3)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 13

§ 1681i(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

§ 1681o. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

§ 1681s-2(a)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Plaintiff Raymond Alvandi's Memorandum of Points and Authorities in
Opposition to Motion for Summary Judgment**

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

### I. INTRODUCTION

Plaintiff Raymond Alvandi ("Alvandi") opposes Experian Information Solutions, Inc.'s ("Experian") motion for summary judgment which argues that undisputed evidence demonstrates that his credit reports did not contain inaccurate information. As shown by this opposition, there remains a disputed fact as to whether the information in his Experian credit report was accurate, and in any event, Experian still violated the Fair Credit Reporting Act (FCRA) for its failure to adequately reinvestigate Alvandi's dispute. Disputed facts exist as to the following claims against Experian:

A. Failure to Reinvestigate Within 30-days (15 U.S.C. § 1681i(a)(1))

B. Failure Re: Maximum Possible Accuracy (15 U.S.C. § 1681e(b))

### II. FACTS

#### Joolhar Medical Services

On or about November and December 2008, Alvandi received medical services from the medical office of Fowrooz S. Joolhar, M.D. ("Joolhar") [DF 20] Joolhar's medical office agreed to accept insurance benefits as payment in full. [DF 21] The medical services were timely paid in full by his health insurance company. [DF 22] The plaintiff never received a bill, statement of account, or other notice from Joolhar that he owed anything. [DF 23] Joolhar's records reflect that although $523 is listed as a balance, Alvandi was not charged this balance as confirmed by Alvandi's testimony about the agreement and by the delinquency history at the bottom of Joolhar's records which state: "Over 30 days, Over 60 days, Over 90 days, Over 120, Insurance Pending" all notations reflecting zero dollars owed. [DF 24] The plaintiff does not, and did not, owe $523.78 or any other sum to Joolhar. There was no written

-1-

agreement that required Alvandi to pay any specific amount or any interest thereon. [DF 25]

**Fidelity Collection Item**

Around September 2012 the Alvandi discovered that Fidelity Creditor Services ("Fidelity") was reporting a negative account on his credit reports. [DF 26] He later discovered that the original creditor of the Fidelity collection item was Joolhar. [DF 27] The item was causing him to have poor credit scores with TransUnion, Experian and Equifax credit reporting agencies [5/23/13 3-in-1 credit report: respective scores: 625/592/597] [DF 28] To this day, he has never received a validation letter or debt collection letter from Fidelity, yet it continues to furnish the collection item on his Experian credit report. [DF 29]

**Lexington Law Retained to Dispute Fidelity Item**

Alvandi retained Lexington Law Firm "Lexington Law" in September 2012 to assist him in removing the Fidelity item from his credit reports. [DF 30] Lexington Law is a credit repair law firm in business since 1992. It assists clients in attempting to remove negative tradelines from their credit reports. [DF 31] Alvandi asserted that he'd been a victim of identity theft, and that numerous negative tradelines on his credit reports were in fact not his, as a possible result of the identity theft. [DF 32] Alvandi wanted roughly eight tradelines across the three bureaus removed because he did not believe they were his accounts.  One of those tradelines was a collection account by Fidelity Capital Holdings, also known as Fidelity Creditor Service. [DF 33]

When a client says a tradeline on the report is not his, Lexington Law's method of dispute depends on the credit bureau to whom it is directed. For Trans-Union and Equifax, an electronic dispute is submitted to those bureaus directly, at which time the bureaus undertake an investigation. [DF 34] When a client has multiple disputes, Lexington spaces out the disputes transmittals to the credit reporting agencies

1 | because to avoid having the dispute flagged as frivolous. [DF 35]

2

3 | **Equifax and TransUnion Removed Fidelity Item**

4 | Lexington Law has a reciprocal agreement with TransUnion and Equifax which

5 | allows Lexington Law to submit disputes electronically. Instead of responding to

6 | each electronic dispute individually, what they provide on a roughly monthly basis is

7 | an abbreviated version of the TransUnion or Equifax credit report. It is by comparing

8 | the most recently received report to previous ones that Lexington Law is able to

9 | determine whether or not the process has resulted in the removal of a negative credit

10 | line. The abbreviated report is called an internal auto-generated report. [DF 36]

11 | Lexington created an auto-generated report generated September 10, 2012 from

12 | Equifax, who was not reporting the Fidelity item. [DF 37] It created an

13 | auto-generated report generated September 10, 2012 from TransUnion, who was

14 | reporting the Fidelity item. [DF 38] It sent an electronic dispute to TransUnion on

15 | May 15, 2013 regarding the Fidelity tradeline. TransUnion performed a

16 | re-investigation in response. [DF 39] Alvandi ordered and received a 3-in-1 credit

17 | report, dated May 23, 2013, containing combined reports from Equifax, TransUnion,

18 | and Experian. A three 3-in-1 report is a credit report compiled by a third party that

19 | contains information presumably from all three credit reporting agencies. It was

20 | submitted by Alvandi directly to Lexington Law who then uploaded it into their

21 | database. [DF 40] Lexington Law's internal auto-generated report, dated June 7,

22 | 2013, reflects that TransUnion removed the Fidelity item. Lexington created an

23 | auto-generated report generated July 6, 2013, and it reflects that TransUnion removed

24 | the Fidelity item. All negative items are removed from Alvandi's TransUnion credit

25 | report. [DF 52] All negative items were removed from Alvandi's TransUnion credit

26 | report. [DF 41]

27

28

**Plaintiff Raymond Alvandi's Memorandum of Points and Authorities in
Opposition to Motion for Summary Judgment**

**Experian Did Not Reinvestigate Multiple Disputes**

Lexington created an auto-generated report generated September 10, 2012 from Experian, populating it with TransUnion information in order to get the dispute process going. [DF 42] As for Experian, an internal report is initially populated by TransUnion's data because Experian does not provide electronic reports to Lexington Law. Unlike with TransUnion and Equifax, Lexington Law does not have a contractual agreement with Experian which permits electronic disputes. [DF 43] For disputes transmitted to Experian, a letter is generated from the document processing center in North Salt Lake, Utah. Those letters are drafted on behalf of Mr. Alvandi and are delivered with a batch of similar correspondence via Federal Express to a local remailing location near Mr. Alvandi's home. Each letter is sent in a separate envelope to Experian. [DF 44] Because the physical letters are sent to Experian on behalf of the client, the return address on the letter is from the client individually. If Experian responds to that correspondence the correspondence would be directed to the client directly, and the client is to provide any correspondence received in the mail from either creditor or credit bureau, to Lexington Law so that take the appropriate action. [DF 45]

The Fidelity collection account was the only negative items on the Experian credit report. [DF 46] Lexington Law mailed a written dispute to Experian on May 17, 2013 regarding the Am Ex / HSBC Cap One Bank tradelines. [DF 47] Experian did not respond to, or reinvestigate the May 17, 2013 dispute. [DF 48] Lexington Law mailed a written dispute to Experian on June 14, 2013 regarding the Fidelity tradeline. The dispute letter is correctly addressed to Experian at a location where it receives dispute letters. [DF 49] Experian did not respond to, or reinvestigate the June 14, 2013 dispute. [DF 50] Experian testified that it would not have classified the June 14, 2013 letter as a dispute and therefore no reinvestigation would have been made and no action would have been taken. It would have been deemed to be suspicious. [DF 51]

-4-

1  Lexington Law mailed a second written dispute to Experian on December 13, 2013

2  regarding the Fidelity tradeline. [DF 54] Experian did not respond to, or reinvestigate

3  the December 13, 2013 dispute. [DF 55] Experian has no record of receiving the

4  dispute letter. If it did receive such letter, it would have been deemed suspicious and

5  there would be no record made of it. [DF 56] Lexington Law mailed a third written

6  dispute to Experian on February 21, 2014 regarding the Fidelity tradeline. [DF 58]

7  Experian did not respond to, or reinvestigate the February 21, 2014 dispute. [DF 59]

8  Experian did not deem the dispute letter, dated February 21, 2014 to be a consumer

9  dispute originating from Mr. Alvandi. [DF 60] If Experian had received the letters

10 sent on June 14, 2013, December 13, 2013, and February 21, 2014 it would not have

11 stored the letters or the envelopes they came in. [DF 61]

12     **Experian's Policies and Practices**

13     Experian designated Scott to testify as the Person Most Knowledgeable regarding

14 communications between Experian and (1) Lexington Law Firm, (2) the Fullman

15 Firm, (3) Fidelity Capital Holdings, also known as Fidelity Creditor Service, Inc., (4)

16 Raymond Alvandi; and to testify regarding (5) credit files, reports, ACDVs, CDVs,

17 and E-Oscar concerning Mr. Alvandi, (6) documents produced by Experian, (7)

18 practices and procedures concerning the handling of dispute items on credit reports,

19 (8) disputes furnished by Lexington Law Firm, practices, the Fullman Firm, and

20 credit repair agencies. [DF 66]

21     When Experian receives a dispute mailed by or on behalf of a consumer it opens

22 it, reads the contents of the letter, and looks for certain characteristics to determine if

23 it had been sent by the individual directly or if it could have come from a third party.

24 [DF 67] Experian would consider a dispute to be a hand-signed request to initiate a

25 reinvestigation regarding a specific item in the credit report. [DF 68] If Experian

26 receives a dispute that is not hand-signed, then Experian would not respond to such a

27 request. [DF 69] If Experian receives a dispute and it does show signs that the

28 consumer is participating, maybe they include a copy of their driver's license or a

-5-

**Plaintiff Raymond Alvandi's Memorandum of Points and Authorities in
Opposition to Motion for Summary Judgment**

1   utility bill to confirm that they're living at a certain address, then Experian would go
2   ahead and have those documents scanned and imaged to be processed. [DF 70] If
3   Experian receives a dispute that was signed but Experian still had reason to believe
4   that it was not sent by the consumer, Experian would then send out a communication
5   to the consumer describing that Experian had received a suspicious contact; and that
6   if they did indeed themselves send that dispute, to please contact Experian, again, so
7   that it can reinvestigate their items. [DF 71]

8   **Experian Did Not Follow It's Policy**

9   On February 19, 2014 Alvandi personally mailed a dispute letter to Experian
10  regarding an inquiry made by Chase for his credit information. Alvandi did not sign
11  the letter by hand. [DF 72] Experian determined that the letter, dated February 19,
12  2014, and envelope it came in, was not sent by Mr. Alvandi because it deemed the
13  letter to be suspicious in the sense it was not certain it was sent by Alvandi. Experian
14  believed the letter to be very generic and not signed. [DF 64]  In response to the
15  February 19, 2014 letter, Experian sent Alvandi a notice that it had received a
16  suspicious letter. Although the letter is not hand signed, Experian does not know why
17  it scanned and responded to the letter. [DF 73] The letter would be generated only
18  after Experian received a dispute letter that was physically signed. [DF 74] Experian
19  made no record anywhere in its files of any other information it reviewed to
20  determine that the letter and envelope, dated February 19th was not sent by Mr.
21  Alvandi. [DF 75]

22  **Experian Created Sham Dispute After Lawsuit Filed**

23  This lawsuit was filed on 06/06/14. [DF 65] On August 8, 2014 Experian created
24  an Automated Consumer Dispute Verification (ACDV) is Experian's response to a
25  dispute not submitted by Alvandi. It was generated in response to a request from
26  Experian's counsel. Consumer states inaccurate information. Provide or confirm
27  complete ID and account information.  The ACDV states: "I thought that everything
28  was paid.  Never received any collection notices from Fidelity." The content of this

**Plaintiff Raymond Alvandi's Memorandum of Points and Authorities in
Opposition to Motion for Summary Judgment**

dispute response was generated by Jason Scott at the direction of Experian's attorneys. After Fidelity and Experian had been sued, Fidelity purported to confirm the item as accurate pursuant to Experian's reinvestigation report 8/28/14 [DF 63] The Experian credit report, dated October 2, 2014 (after the present lawsuit was filed) still has the Fidelity item listed. Under the "Status Details" section of this report there is a notation stating, "This item was updated from our processing of your dispute in August 2014." However, neither Alvandi nor Lexington sent a dispute to Experian in August 2014. [DF 76]

**Experian Credit Reports Contain Multiple Inaccuracies**

The Experiandirect.com Credit Report, dated 11/4/13, reflects that the Fidelity collection account is still listed and has increased from $523 to $781. [DF 53] The Experian credit reports, dated 2/11/14, 2/12/14, 2/14/14, and 2/18/14, reflect that the Fidelity collection account is still listed and has increased from $523 to $796 and that it has been in collection since September 2009. [DF 57] The Experian credit reports, dated 3/9/14, 4/10/14, 4/15/14, 5/10/14, 6/10/14, 8/4/14, 8/28/14, 9/20/14, 9/30/14, 10/2/14, 12/21/14, 1/17/15, reflect that the Fidelity collection account is still listed and has increased from $523 to $840 and that it has been in collection since September 2009. [DF 62]

**Multiple Inaccuracies Remain**

The Fidelity item is inaccurate because (1) Alvandi is paid in full. [DF 77], (2) it conflicts with Joolhar's statement of account which reflects that although $523 is listed as a balance, the delinquency history ("Over 30 days, Over 60 days, Over 90 days, Over 120, Insurance Pending") all reflect zero dollars owed by Alvandi [DF 78], (3) it reflects an increasing balance owed. Even were it ultimately determined that the plaintiff owed $523 on the Joolhar account, the Experian credit reports show an ever increasing overdue balance—the plaintiff was not obligated to pay interest or any other fees or collection costs associated with the account [DF 79], and (4) the court in this action issued a judgment against Fidelity—the judgment awarded

damages to Alvandi under the Fair Debt Collection Practices Act for actions taken by Fidelity in reporting the item on Alvandi's credit reports. [DF 80]

## III. SUMMARY JUDGMENT LEGAL STANDARD

Summary judgment is appropriate if, viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party, there are no genuine disputed issues of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "If the evidence is merely colorable, or is not significantly probative," the court may grant summary judgment. Id. at 249–50 (citation omitted). At the summary judgment stage, the Court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial." *House v. Bell*, 547 U.S. 518, 559–60 (2006).

The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. *Celotex*, 477 U.S. at 323. To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000) (citation omitted). Once the moving party has satisfied its initial burden of production, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact. *Id.* at 1103.

## IV. FAIR CREDIT REPORTING ACT VIOLATIONS

### A. <u>Duty of Credit Reporting Agencies</u>

The complaint seeks damages against Experian for violations of Fair Credit

Reporting Act (FCRA).  (*See* 15 U.S.C. § 1681 *et. seq.*)[1]  "The FCRA was the product of congressional concern over abuses in the credit reporting industry. The legislative history of the FCRA reveals that it was crafted to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner. These consumer oriented objectives support a liberal construction of the FCRA." *Guimond v. Trans Union Credit Information Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995)

Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates. (§ 1681e(b)) Furthermore, if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer the agency shall reinvestigate within a specified time period. (§ 1681i(a)(1)); *Dennis v. BEH-1, LLC*, 520 F.3d 1066 (9th Cir. 2008)[2]

## B. Requirement of Maximum Accuracy

Congress did not limit the FCRA's mandate to reasonable procedures to assure only technical accuracy; to the contrary, the FCRA requires reasonable procedures to assure "maximum accuracy." The Act's self-stated purpose is "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit . . . in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." *Koropoulos v. Credit Bureau, Inc.*, 734 F.2d 37, 40

---

[1]  All statutory references are to 15 U.S.C. § 1681 *et. seq*. unless otherwise noted.

[2]  Alvandi's counsel of record was also plaintiff and appellate counsel in the *Dennis* case.

**Plaintiff Raymond Alvandi's Memorandum of Points and Authorities in Opposition to Motion for Summary Judgment**

1   (D.C. Cir. 1984) cited with approval by *Drew v. Equifax Info. Svcs, LLC*, 690 F.3d

2   1100, 1108 (9th Cir. 2012)

3      "[A]n item on a credit report can be 'incomplete or inaccurate' . . . 'because it is

4   patently incorrect, or because it is misleading in such a way and to such an extent that

5   it can be expected to adversely affect credit decisions.'" *Carvalho v. Equifax Info.*

6   *Svcs., LLC*, 629 F.3d 876, 890 (9th Cir.2010) (quoting *Gorman v. Wolpoff &*

7   *Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009) Information that is inaccurate

8   "on its face," is "patently incorrect." *Id.* at 891. A consumer's failure to pay a debt that

9   is not really due " does not reflect financial irresponsibility," and thus the omission of

10  the disputed nature of a debt could render the information sufficiently misleading so

11  as to be " incomplete or inaccurate" within the meaning of the FCRA. *Gorman v.*

12  *Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009) See also *Koropoulos*

13  *v. Credit Bureau, Inc.*, 734 F.2d 37, 40 (D.C. Cir. 1984) ("reports containing factually

14  correct information that nonetheless mislead their readers are neither maximally

15  accurate nor fair to the consumer")

16  **C. Experian's Violation of Fair Credit Reporting Act**

17  **1. § 1681i Claim**

18     If the completeness or accuracy of any item of information contained in a

19  consumer's file at a consumer reporting agency is disputed by the consumer and the

20  consumer notifies the agency of such dispute, the agency shall, free of charge,

21  conduct a reasonable reinvestigation to determine whether the disputed information is

22  inaccurate and record the current status of the disputed information, or delete the item

23  from the file before the end of the 30-day period beginning on the date on which the

24  agency receives the notice of the dispute. (§ 1681i(a)(1)(A))

25     Within specified time limits, a consumer reporting agency shall provide

26  notification of the dispute to any person who provided any item of information in

27  dispute and shall include all relevant information regarding the dispute that the

28  agency has received from the consumer. (§ 1681i(a)(2)(A))

**Plaintiff Raymond Alvandi's Memorandum of Points and Authorities in Opposition to Motion for Summary Judgment**

1    The consumer reporting agency shall promptly provide to the person who

2    provided the information in dispute all relevant information regarding the dispute that

3    is received by the agency from the consumer within specified time limits. §

4    1681i(a)(3)(B)

5        The failure to reinvestigate is negligence as a matter of law. *Dennis v. BEH-1,*

6    *LLC*, 520 F.3d 1066, fn 4 (9th Cir. 2008) A consumer reporting agency may terminate

7    a reinvestigation of information disputed by a consumer if the agency reasonably

8    determines that the dispute by the consumer is frivolous or irrelevant, including by

9    reason of a failure by a consumer to provide sufficient information to investigate the

10   disputed information. (§ 1681i(a)(3)(B))

11       Although the FCRA's reinvestigation provision, § 1681i, does not on its face

12   require that an actual inaccuracy exist for a plaintiff to state a claim, courts have

13   imposed such a requirement. *Carvalho v. Equifax Info. Svcs, LLC*, 629 F.3d 876, 890

14   (9th Cir. 2010) (citing *Dennis v. BEH-1, LLC*, 520 F.3d 1066 (9th Cir. 2008))

15   Applying the above rules to the facts of this case reveals multiple inaccuracies.

16       **Patent Inaccuracy.** The Fidelity item is facially or patently inaccurate because it

17   directly conflicts with Joolhar's statement of account which reflects that although

18   $523 is listed as a balance, the delinquency history ("Over 30 days, Over 60 days,

19   Over 90 days, Over 120, Insurance Pending") all reflect zero dollars owed by

20   Alvandi. Fidelity's item includes interest, fees, charges, or expenses on top of the

21   alleged principal obligation which have brought the original balance from $523 in

22   September 2009 to $840 as of January 2015. This directly and patently conflicts with

23   the $523 balance in Joolhar's statement of account. It also violates the Fair Debt

24   Collection Practices Act (FDCPA), 15 U.S.C. § 1692f(1), which prohibits the

25   collection by a debt collector of any amount (including any interest, fee, charge, or

26   expense incidental to the principal obligation) unless such amount is expressly

27   authorized by the agreement creating the debt or permitted by law. The court in this

28   action issued a judgment against Fidelity—the judgment awarded damages to Alvandi

under the FDCPA for actions taken by Fidelity in reporting the item on Alvandi's credit reports. [DF 80]. The FDCPA, 15 U.S.C. § 1692e(5) provides that a debt collector may not take or threaten to take any action that cannot legally be taken or that is not intended to be taken. By court decree in the instant action, Fidelity has been found liable for damages to Alvandi for reporting the item on his credit reports. It has been conclusively established that the item may not be reported on the plaintiff's credit report and it is therefore inaccurate for Experian to do so.

**Material Inaccuracy.** The Fidelity item in the Experian report is also misleading because it implies that Experian has conducted a reinvestigation and that Fidelity has verified the item as being accurate, with Fidelity updating the item in Experian's credit reports containing the following notice: "Account information disputed by consumer (Meets requirement of the Fair Credit Reporting Act)." (See, e.g., Scott Depo Exh. 10) This is a notice imposed on a furnisher, like Fidelity, by § 1681s–2(a)(3) which provides "[i]f the completeness or accuracy of any information furnished by any person to any consumer reporting agency is disputed to such person by a consumer, the person may not furnish the information to any consumer reporting agency without notice that such information is disputed by the consumer." A credit reporting agency has a mandatory duty to put the furnisher's dispute notice in the credit report. § 1681c(f)  In Alvandi's case, Experian created the misleading impression that Fidelity had been contacted, reviewed the file, and then updated the time to reflect that it was disputed. However, Experian did not reinvestigate, rather it simply trashed the dispute letters without taking any action. The impression that a reinvestigation has been performed and that Fidelity verified the accuracy of the debt is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.

**Failure to Conduct Investigation.** Experian did not even conduct an investigation, i.e., it did not notify Fidelity of the dispute within the time limits and in the manner required by the FCRA, § 1681i(a)(1)(A), § 1681i(a)(2)(A), and §

-12-

1681i(a)(3)(B). Experian is therefore negligent as a matter of law. *Dennis v. BEH-1, LLC*, 520 F.3d 1066, fn 4 (9th Cir. 2008) (failure to reinvestigate is negligence as a matter of law). The only justification for not conducting an investigation would be that Alvandi's disputes were "frivolous or irrelevant, including by reason of a failure by a consumer to provide sufficient information to investigate the disputed information." (§ 1681i(a)(3)(B)) But Experian's justification for not conducting a reinvestigation is not because the disputes were frivolous or irrelevant but because of procedures it devised to redefine the meaning of "dispute," essentially limiting the meaning to hand-signed dispute letters sent by individuals. Even then, if the letters are deemed "suspicious" (however Experian decides to apply it on ad hoc bases) no reinvestigation would be performed but Experian would instead send out a notice of suspicious contact to the consumer. Nothing about this makes any sense because Experian has the consumer's address and telephone numbers and can match the address on the dispute letter and also send the reinvestigation result to the consumer to the address it has on file. Experian's procedures are not reasonable because the FCRA cannot be read to authorize or permit a credit reporting agency to redefine dispute letters into the trash can or create procedures which impede law offices from assisting consumers. *Cortez v. Trans Union, LLC*, 617 F.3d 688, 723 (3rd Cir. 2010), (credit reporting agency liable for punitive damages when it "contorted its policies to avoid its responsibilities under the FCRA")

These artificial hurdles appear to be the product of a business dispute between Experian and credit repair law firms. Whether Experian's procedure stems from a desire to avoid the cost of reinvestigating bulk dispute letters sent by Lexington Law, or to leverage Lexington Law into paying more for an agreement to send electronic disputes in bulk as Lexington Law does with TransUnion and Equifax—none of this matters. The FCRA is designed to protect the consumer—not a credit reporting agency's financial bottom line. See, *Guimond, supra,* at 1333. It is elementary that a consumer is entitled to retain a law firm to assist him in the removal of a disputed

-13-

item from his credit report. (9th Cir. Mod. Man. Jury Instr. 4.4, Agent and Principal—Definition) Experian's procedure of requiring a hand signature on dispute letters, and its outright refusal to acknowledge dispute letters sent by Lexington Law interferes with Alvandi's agency relationship with his attorneys. The FCRA simply does not permit the impediments Experian has created. In any event, the reasonableness of the procedures and whether the agency followed them is a jury question. *Guimond, supra,* at 1333.

Alvandi has submitted evidence that Experian did not even follow its procedures as demonstrated by the February 19, 2014 letter regarding the Chase inquiry. Experian deemed the letter to be suspicious in the sense it was not certain it was sent by Alvandi. Experian believed the letter to be very generic and not signed. Instead of disposing of the letter as it should have done had it followed its supposed procedures Experian sent Alvandi a notice that it had received a suspicious letter. No explanation was give as to why it scanned and responded to this letter and not the three dispute letters it received regarding Fidelity. This ad hoc, unpredictable behavior on the part of Experian is circumstantial evidence that Experian's actual procedure is to destroy any and all dispute letters received in bulk from Lexington Law without regard to whether Alvandi's dispute of the Fidelity item is genuine.

In conclusion, Alvandi has met his burden under § 1681i(c) by demonstrating that the Fidelity item was inaccurate and that Experian failed to conduct a reinvestigation. Although not required, Alvandi even showed that Experian was negligent as a matter of law under § 1681o (credit reporting agencies liable for negligent violation of the FCRA). Viewing the evidence and drawing all reasonable inferences in the light most favorable to Alvandi the summary judgment must be denied.

**2. § 1681e(b) Claim**

In order to make out a prima facie violation under § 1681e(b), a consumer must present evidence tending to show that a credit reporting agency prepared a report containing inaccurate information. *Guimond v. Trans Union Credit Information Co.,*

-14-

45 F.3d 1329, 1333 (9th Cir. 1995) The consumer reporting agency can escape liability if it establishes that an inaccurate report was generated despite the agency's following reasonable procedures. (*Id.*) The reasonableness of the procedures and whether the agency followed them will be jury questions in the overwhelming majority of cases." (*Id.*) If the consumer reporting agency fails to conduct an investigation, the reasonableness of its reinvestigation procedure is irrelevant because the failure to reinvestigate in the first instance is negligence as a matter of law. *Dennis,* at fn. 4.

The same facts which support Alvandi's §1681i claim also make is his prima facie claim under § 1681e(b) which shows that the Experian credit report contains inaccurate information furnished by Fidelity. *Guimond, supra,* at 1333. Further, Experian's failure to reinvestigate is negligence as a matter of law. *Dennis v. BEH-1, LLC*, 520 F.3d 1066, fn 4 (9th Cir. 2008)  Experian's moving papers are devoid of any testimony or other evidence showing what Experian's procedures are or whether such procedures were reasonable. Even had it done so, the reasonableness of the procedures and whether the agency followed them are jury questions. Viewing the evidence and drawing all reasonable inferences in the light most favorable to Alvandi summary judgment must be denied.

## V. EXPERIAN'S PROCEDURAL ARGUMENTS ARE WITHOUT MERIT

### A. Alvandi's Verbal Agreement with Joolhar's office Not Hearsay

Alvandi has personal knowledge about whether a verbal agreement was made with Joolhar's office. See, *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1164 (9th Cir. 2009) (consumer testimony of contents of unsubmitted credit reports is admissible and not hearsay) Accordingly, Alvandi's testimony as to the verbal agreement is competent and admissible evidence.

### B. Deposition Testimony by Lay Witness Is Not a Legal Position or Theory

Experian argues that Alvandi, at his deposition, took the position for the first time that he is not obligated to pay the outstanding debt because an unidentified office

-15-

assistant or office manager verbally agreed that any payment by Plaintiff's insurance company would constitute "payment in full" and thus Plaintiff was "covered completely." A review of pages 100, 102 and 106 of Alvandi's deposition reveals only that Experian's attempt to transmogrify plaintiff's answers into binding legal theories is deceptive and without any merit. Experian's deposition questions did not ask Alvandi for his lay person's legal theories of how Experian violated the FCRA. In any event, a lay witness's opinion or legal theories are inadmissible lay opinions or legal conclusions. FRE 701.

**C. No Collateral Attack Is Made on Debt**

Experian relies on *Carvalho v. Equifax Info. Svcs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010) which held that when a consumer does not dispute the accuracy of a debt, the consumer may not use reinvestigation claim to collaterally attack the legal validity of the debt. *Carvalho* is factually and legally distinct from the facts of the present case and therefore is not applicable.

In *Carvalho*, the plaintiff did not contend that the collection account does not pertain to her, or that the amount past due was too high or low, or that any of the listed dates were wrong. She conceded that " [a]ll the data that shows in my credit report is correct" on its face. Because all of the relevant facts were correctly reported, the court of appeal held there was no patent error in Carvalho's credit report. *Id.* at 891. Contrary to the plaintiff in *Carvalho*, Alvandi disputes the Fidelity item in its entirety. He has submitted evidence that he does not owe it, and that even were he to owe the $523 the debt incorrectly shows that he owes up to $840. He has submitted evidence showing that the Fidelity item in the Experian report is misleading because it falsely implies that Experian has conducted a reinvestigation and that Fidelity has verified the item as being accurate

Unlike the plaintiff in *Carvalho* who contended that even if technically accurate, the collection item was misleading because she was not legally obligated to pay it until the creditor had properly billed her insurer (*Id.* at 891), Alvandi makes no such

-16-

1   contention. Rather, his condition is that the Fidelity item is facially inaccurate and

2   also materially misleading. Unlike in *Carvalho*, Experian is not being asked to

3   provide a legal opinion on the merits of the debt or whether Alvandi has a valid

4   defense to it. *Id.* 892. Nothing in the *Carvalho* decision reverses or conflicts with its

5   responsibility to reinvestigate a disputed debt. *Gorman, supra,* at 1156-57 (citing

6   § 1681i(a)(1). Experian is not required to accept Alvandi's assertion that the Fidelity

7   item is inaccurate—however, they are required timely reinvestigate as required by the

8   FCRA.[3]

9                                           CONCLUSION

10      For all of the foregoing reasons, the court should deny the motion for summary

11   judgment in full.

12   Dated:  May 31, 2015              LAW OFFICE OF LOUIS P. DELL

13                                      */s/ Louis P. Dell*
                                        Louis P. Dell, Esq.
14                                      Attorney for Plaintiff,
                                        RAYMOND ALVANDI

15

16

17

18

19

20

21

22

23

24

_____

25      [3]  As set forth in the factual summary, the August 2014 "reinvestigation" was a

26   sham and not based upon any dispute submitted by Alvandi. In any event, it was

27   untimely under § 1681i(a)(1)(A) because it was not conducted within 30-days of a

28   dispute made by Alvandi.

**Plaintiff Raymond Alvandi's Memorandum of Points and Authorities in
Opposition to Motion for Summary Judgment**